

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN M. GOURLAY and
CORINNA K. DELAWTER-GOURLAY

Plaintiffs,

vs.

Case No. 8:02 CV 1955-T30 EAJ

FOREST LAKE ESTATES CIVIC
ASSOCIATION OF PORT RICHEY, INC.
and WALTER A. LUCAS

Defendants.

## VERIFIED COMPLAINT

COME NOW Plaintiffs, STEVEN M. GOURLAY and CORINNA K. DELAWTER-

GOURLAY, individually and in their capacity as foster parents, and for their cause of action against

the Defendants, FOREST LAKE ESTATES CIVIC ASSOCIATION OF PORT RICHEY, INC. and

WALTER A. LUCAS, state and allege as follows:

### PARTIES

1.      Plaintiff Steven M. Gourlay is, and was at all times relevant to the allegations herein,

an adult resident of Pasco County, Florida, residing at 8649 Forest Lake Drive, Port Richey, Florida.

2.      Plaintiff Corinna K. Delawter-Gourlay is, and was at all times relevant to the

allegations herein, an adult resident of Pasco County, Florida, residing at 8649 Forest Lake Drive,

Port Richey, Florida.

20201.1

3.      Defendant Forest Lake Estates Civic Association of Port Richey, Inc. ("FLECA") is, and was at all times relevant to the allegations herein, a non-profit corporation, incorporated in the State of Florida, with its principal place of business at 7618 Tall Tree Ct., Port Richey, Florida.

4.      Defendant Walter A. Lucas ("Lucas") is, and was at all times relevant to the allegations herein, an adult resident of Pasco County, Florida, residing at 7613 Tall Tree Court, Port Richey, Florida.

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 3613, 28 U.S.C. §§ 1331, 1337, 1343(a)(4).

## VENUE

6.      Venue is proper in the United States District Court for the Middle District of Florida because Defendant FLECA is a corporate entity with its principal place of business within that district.

## FACTS

7.      Defendant FLECA is a homeowners association which claims authority to enforce deed restrictions applicable to property in the Forest Lake Estates housing development pursuant to the "Declaration of Restrictions, Forest Lake Estates" ("deed restrictions").

8.      Defendant Lucas is the vice president of FLECA and a resident of Forest Lake Estates.  Mr. Lucas has asserted authority to enforce deed restrictions applicable to property in the Forest Lake Estates.

20201.1                              - 2 -

9.      Plaintiffs Corinna and Steven Gourlay are husband and wife. They have 4 biological children and 5 foster children.

10.     On October 4, 1999, Plaintiffs purchased a home in Forest Lake Estates, located at 8649 Forest Lake Drive, Port Richey, Florida ("the home").

11.     Shortly thereafter, Defendant Lucas contacted the Gourlays and told them that the home was subject to certain deed restrictions.

12.     The home was in disrepair and had been subject to foreclosure when the Gourlays purchased it.

13.     The Gourlays repaired and renovated the home and put it in proper repair.

14.     The Gourlays have lived peaceably in their home in Forest Lake Estates. There have been no reports of any trouble at their home. In fact, many of the neighbors were not even aware that the Gourlays had nine children.

15.     In October 2001, Defendant Lucas directed Plaintiffs to install a green tarp over their fence because the neighbors did not want to see Plaintiffs' children playing in their backyard.

16.     Defendant Lucas threatened Plaintiffs that if they did not install the tarp, he would pursue a lawsuit against them for violating deed restrictions by placing a swing set in their backyard.

17.     Plaintiffs installed the tarp.

18.     In September 2002, Plaintiffs approached Defendant Lucas for permission to widen their driveway.

19.    Defendant Lucas told Plaintiffs they did not need three cars, and that he would not approach the architectural committee about their request. He further accused Plaintiffs of running a daycare.

20.    Ms. Gourlay denied that she was running a daycare and told Defendant Lucas that they had foster children.

21.    On or about September 18, 2002, Plaintiffs received a letter from FLECA's attorney, Donald Peyton, stating that Plaintiffs were in violation of the deed restrictions because they were not limiting the use of their home to a single family, were permitting "structures or improvements to be erected, or placed on" their property without written approval of the "Architectural Control Committee" and that these conditions were creating an annoyance or nuisance to the neighborhood in violation of the deed restrictions.

22.    The September 18, 2002, letter further threatened the Gourlays with a lawsuit and consequent fees and costs if they did not reply with assurances within 10 days that they would "voluntarily comply" with the deed restrictions by "correcting" the purported violations.

23.    Ms. Gourlay contacted Mr. Peyton in an attempt to determine what specific things FLECA claimed were violations of the deed restrictions.

24.    Mr. Peyton stated that the Gourlays were not restricting their home to single family use because they were keeping foster children. Mr. Peyton refused to elaborate on what "structures or improvements" had been erected that were purportedly in violation of the deed restrictions, told Ms. Gourlay that he would not discuss the matter further with her, and that she would have to hire an attorney.

20201.1                                    - 4 -

25.     The Gourlays did not evict their foster children.

26.     On October 7, 2002, Defendant FLECA filed a lawsuit against Mr. Gourlay, seeking a declaratory judgment that the Gourlays were in violation of the deed restrictions by "permitting approximately five (5) persons who are not related to [Mr. Gourlay] by either blood or marriage to reside in" the Gourlay's home and that such had created an annoyance or nuisance to the neighborhood in violation of the deed restrictions.

27.     Defendants continue to coerce, harass, intimidate, and threaten the Gourlays and their children by various means, including taking pictures of their children playing in the Gourlays' back yard, and by making threatening and derogatory statements in FLECA's news letter and the media.

28.     The actions of Mr. Lucas and FLECA in coercing, intimidating, and threatening the Gourlays in relation to their status as a foster family have caused the Gourlays and their children significant emotional distress, anxiety, fear, and physical injury.

## COUNT I - FEDERAL FAIR HOUSING ACT

29.     Plaintiffs hereby adopt the allegations set forth in Paragraphs 1 through 28 above, as if set forth in full hereinafter.

30.     This is a cause of action for damages pursuant to 42 U.S.C. § 3601, et seq., the federal Fair Housing Act, for discriminatory housing practices.

31.     Plaintiffs are aggrieved persons within the meaning of 42 U.S.C. § 3601, et seq., in that they have been injured by a discriminatory housing practice and they will be further injured by a discriminatory housing practice.

20201.1

- 5 -

32.     The Gourlays are members of a protected class, in that they are in the class of persons who enjoy protection from discrimination based on "familial status" under the terms of 42 U.S.C. § 3601, et seq.

33.     The Gourlays therefore enjoy a protected right under the federal Fair Housing Act.

34.     Defendants have engaged in intentional discriminatory housing practices by

(a)     denying Plaintiffs the use and enjoyment of their dwelling because of their familial status;

(b)     constructively making Plaintiffs' premises unavailable for their use and enjoyment because of their familial status;

(c)     discriminating in the provision of services or facilities in connection with the premises because of their familial status;

(d)     printing, publishing, or causing to be made, printed, or published a notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or an intention to make such preference, limitation, or discrimination;

(e)     harassing them and attempting to force them out of their home in Forest Lake Estates because of their familial status; and

(f)     coercing, intimidating, threatening, and interfering with Plaintiffs' exercise and enjoyment of their housing rights.

20201.1

WHEREFORE, by reason of the aforementioned acts and results, Plaintiffs have suffered damages including, but not limited to, actual and emotional damages and demand judgment of and from Defendants, together with all interest, court costs and attorneys' fees.

## COUNT II - FLORIDA FAIR HOUSING ACT

35.    Plaintiffs hereby adopt the allegations set forth in Paragraphs 1 through 34 above, as if set forth in full hereinafter.

36.    This is a cause of action for damages pursuant to Fla. Stat. § 760.20, et seq., the Florida Fair Housing Act, for discriminatory housing practices.

37.    Plaintiffs are persons who have been injured by a discriminatory housing practice and who believe that they will be injured by further discriminatory housing practices.

38.    The Gourlays are members of a protected class, in that they are in the class of persons who enjoy protection from discrimination based on "familial status" under the terms of Fla. Stat. § 760.20, et seq.

39.    The Gourlays therefore enjoy a protected right under the Florida Fair Housing Act.

40.    Defendants have engaged in intentional discriminatory housing practices by

(a)    denying Plaintiffs the use and enjoyment of their dwelling because of their familial status;

(b)    constructively making Plaintiffs' premises unavailable for their use and enjoyment because of their familial status;

(c)    discriminating in the provision of services or facilities in connection with the premises because of their familial status;

20201.1

- 7 -

(d)     printing, publishing, or causing to be made, printed, or published a notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or an intention to make such preference, limitation, or discrimination;

(e)     harassing them and attempting to force them out of their home in Forest Lake Estates because of their familial status; and

(f)     coercing, intimidating, threatening, and interfering with Plaintiffs' exercise and enjoyment of their housing rights.

WHEREFORE, by reason of the aforementioned acts and results, Plaintiffs have suffered damages including, but not limited to, actual and emotional damages and demand judgment of and from Defendants, together with all interest, court costs and attorneys' fees.

## COUNT III - FEDERAL FAIR HOUSING ACT - INJUNCTIVE RELIEF

41.     Plaintiffs hereby adopt the allegations set forth in Paragraphs 1 through 40 above, as if set forth in full hereinafter.

42.     This is a cause of action for injunctive relief pursuant to 42 U.S.C. § 3601, et seq., the federal Fair Housing Act, for discriminatory housing practices.

43.     Plaintiffs are aggrieved persons within the meaning of 42 U.S.C. § 3601, et seq., in that they have been injured by a discriminatory housing practice and they will be further injured by a discriminatory housing practice.

20201.1                              - 8 -

44.     The Gourlays are members of a protected class, in that they are in the class of persons who enjoy protection from discrimination based on "familial status" under the terms of 42 U.S.C. § 3601, et seq.

45.     The Gourlays therefore enjoy a protected right under the federal Fair Housing Act.

46.     Defendants have engaged in intentional discriminatory housing practices by

   (a)     denying Plaintiffs the use and enjoyment of their dwelling because of their familial status;

   (b)     constructively making Plaintiffs' premises unavailable for their use and enjoyment because of their familial status;

   (c)     discriminating in the provision of services or facilities in connection with the premises because of their familial status;

   (d)     printing, publishing, or causing to be made, printed, or published a notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or an intention to make such preference, limitation, or discrimination;

   (e)     harassing them and attempting to force them out of their home in Forest Lake Estates because of their familial status; and

   (f)     coercing, intimidating, threatening, and interfering with Plaintiffs' exercise and enjoyment of their housing rights.

WHEREFORE, by reason of the aforementioned acts and results, Plaintiffs seek a preliminary and permanent injunction: (1) enjoining Defendants from further coercing, intimidating, threatening and/or discriminating against Plaintiffs based on their familial status and (2) enjoining Defendants from seeking enforcement of any deed restriction against Plaintiffs based on an improper purpose, including, but not limited to their familial status.

## COUNT IV - FLORIDA FAIR HOUSING ACT - INJUNCTIVE RELIEF

47.     Plaintiffs hereby adopt the allegations set forth in Paragraphs 1 through 46 above, as if set forth in full hereinafter.

48.     This is a cause of action for injunctive relief pursuant to Fla. Stat. § 760.20, et seq., the Florida Fair Housing Act, for discriminatory housing practices.

49.     Plaintiffs are persons who have been injured by a discriminatory housing practice and who believe that they will be injured by further discriminatory housing practices.

50.     The Gourlays are members of a protected class, in that they are in the class of persons who enjoy protection from discrimination based on "familial status" under the terms of Fla. Stat. § 760.20, et seq.

51.     The Gourlays therefore enjoy a protected right under the Florida Fair Housing Act.

52.     Defendants have engaged in intentional discriminatory housing practices by

(a)     denying Plaintiffs the use and enjoyment of their dwelling because of their familial status;

20201.1                                    - 10 -

(b)     constructively making Plaintiffs' premises unavailable for their use and enjoyment because of their familial status;

(c)      discriminating in the provision of services or facilities in connection with the premises because of their familial status;

(d)     printing, publishing, or causing to be made, printed, or published a notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or an intention to make such preference, limitation, or discrimination;

(e)     harassing them and attempting to force them out of their home in Forest Lake Estates because of their familial status; and

(f)     coercing, intimidating, threatening, and interfering with Plaintiffs' exercise and enjoyment of their housing rights.

WHEREFORE, by reason of the aforementioned acts and results, Plaintiffs seek a preliminary and permanent injunction: (1) enjoining Defendants from further coercing, intimidating, threatening and/or discriminating against Plaintiffs based on their familial status and (2) enjoining Defendants from seeking enforcement of any deed restriction against Plaintiffs based on an improper purpose, including, but not limited to their familial status.

## COUNT V - SELECTIVE ENFORCEMENT

53.     Plaintiffs hereby adopt the allegations set forth in Paragraphs 1 through 52 above, as if set forth in full hereinafter.

54.     This is a cause of action for relief against Defendant FLECA for unconstitutional selective enforcement of deed restrictions.

55.     Defendant FLECA has declined to enforce deed restrictions against other homeowners in Forest Lake Estates including, but not limited to, violations of the "single family" restriction and other deed restrictions they seek to enforce against the Gourlays.

56.     Defendant FLECA has demanded and continues to demand that Plaintiffs comply with the "single family" restriction by evicting their foster children.

57.     Defendant FLECA has chosen to unequally and arbitrarily enforce claimed deed restrictions against only a select number of individuals, including Plaintiffs.

        WHEREFORE, by reason of the aforementioned acts and results, Plaintiffs demand judgment of and from Defendant FLECA, together with all interest, court costs and attorneys' fees.

## PUNITIVE DAMAGES

58.     The Plaintiffs hereby adopt the allegations set forth in Paragraphs 1 through 57 above, as if set forth in full hereafter.

59.     The actions of Defendants as set forth herein were willful, wanton and/or reckless and warrant the imposition of punitive damages.

WHEREFORE, by reason of the aforementioned acts and results, Plaintiffs pray for punitive damages, permitted by statute and law, against Defendants.

## DEMAND OF JURY TRIAL

Plaintiffs demand a trial by jury.

RESPECTFULLY SUBMITTED this, the 22nd day of October, 2002.

**STEVEN M. GOURLAY and CORINNA K. DELAWTER-GOURLAY**

By and Through Their Attorneys,

**SHOOK, HARDY & BACON, L.L.P.**

**Matthew J. Moore, Esq.**
Florida Bar No. 476587
**Paul W. Rebein, Esq.**
Florida Bar No. 488003
100 North Tampa Street, Suite 2900
Tampa, Florida 33602
Telephone: (813) 202-7100
Facsimile: (813) 221-8837

**Randall C. Marshall, Legal Director**
American Civil Liberties Union Foundation
of Florida, Inc.
Florida Bar No. 181765
4500 Biscayne Boulevard – Suite 340
Miami, Florida 33137-3127
Telephone: (305) 576-2237
Facsimile: (305) 576-1106

20201.1

- 13 -

## VERIFICATION

**THE FOREGOING FACTS ARE TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE AND BELIEF.**

**STEVEN M. GOURLAY**

By _____

Date: 10/22/02

Subscribed and sworn to before me a notary public, this 22nd day of October, 2002.

_____
NOTARY PUBLIC

My Commission Expires: 05-14-06

```
ANNIE GAINER GLISSON
MY COMMISSION # DD 117431
EXPIRES: May 14, 2006
Bonded Thru Notary Public Underwriters
```

## VERIFICATION

THE FOREGOING FACTS ARE TRUE AND CORRECT TO THE BEST OF MY PERSONAL KNOWLEDGE AND BELIEF.

CORINNA K. DELAWTER-GOURLAY

By _Corinna K Delawter-Gourlay_

Date: _10-22-02_

Subscribed and sworn to before me a notary public, this _22nd_ day of _October_, 2002.

_____
NOTARY PUBLIC

My Commission Expires: _May 14, 2006_

ANNIE GAINER GLISSON
MY COMMISSION # DD 117431
EXPIRES: May 14, 2006
Bonded Thru Notary Public Underwriters

20201.1                    - 15 -

# PEYTON LAW FIRM, P.A.

**7317 Little Road, New Port Richey, FL 34654; Phone: (727) 848-5997; FAX (727) 848-4072**

**Donald R. Peyton**

**Please Reply to:**
**New Port Richey**

September 18, 2002

Mr. Steven M. Gourlay
8649 Forest Lake Drive
Port Richey, FL 34668

In re: Deed Restriction Violation

Dear Mr. Gourlay:

You have been previously contacted concerning your violation of certain deed restrictions recorded in the Public Records of Pasco County, Florida, which pertain to lots in Forest Lake Estates. It is my understanding that as of this date you are still in violation of the restrictions as follows: by failing to restrict the use of your property to a single family, their household servants and guests, exclusively for residential purposes, in violation of Paragraph 1 of the Restrictive Covenants; by permitting structures or improvements to be erected, or placed on your property without written approval of the Architectural Control Committee, in violation of Paragraph 3 of the Restrictive Covenants, all of which has created an annoyance or nuisance to the neighborhood in violation of Paragraph 8 of the Restrictive Covenants recorded in O.R. Book 947, beginning at page 329, Public Records of Pasco County, Florida.

Are you aware that if suit is filed you may be obligated for court costs and attorney fees upon judgment being entered against you? After judgment is obtained, you may also be required to appear and testify as to all of your assets subject to execution, and said assets may be sold at public auction to satisfy these costs and fees. Furthermore, if you do not comply with the Court's judgment, you may be subject to whatever consequences the Court deems appropriate in dealing with your failure to comply. Surely you do not want this to happen, when the matter can be settled by your voluntarily complying with the restrictions.

The purpose of this letter is to give you one more chance to take whatever steps are necessary to comply with the restrictions without legal action. Unless, within ten (10) days from the date of this letter, I receive written notice from you assuring me that you have voluntarily complied with the restrictive covenants by correcting the foregoing violations, I am going to take appropriate legal action as requested by my client, without contacting you further.

Sincerely,
PEYTON LAW FIRM, P.A.

Donald R. Peyton

DRP/jp
cc: Forest Lake Estates

**Branch Office: 5432 Spring Hill Dr., Spring Hill, FL 34606  Ph (352) 688-7566  Fax (352) 688-9686**

DECLARATION OF RESTRICTIONS

FOREST LAKE ESTATES

REC 25.00
ST
SUR
INT
TOT 25.00

TO THE PUBLIC:

## PART A - Preamble

DEEB CONSTRUCTION CO., INC. OF ST. PETERSBURG, FLORIDA, hereinafter referred to as Developer, being the owner of the land situate, being and lying in Pasco County, Florida, and described as follows:

Subdivision: All of FOREST LAKE ESTATES, according to the Plat thereof recorded in Plat Book 16, Pages 18, 19 and 20, of the Public Records of Pasco County, Florida, hereinafter referred to as "Subdivision".

do hereby by these presents make, declare and impose upon said described land the following agreements, conditions, restrictions, limitations and easements which shall be and constitute covenants running with the land, and shall be binding upon the undersigned, its successors and assigns, as well as upon people claiming under it and each and all subsequent purchasers, their heirs, personal representatives, successors and assigns, of said property or any part, parcel or portion thereof, subject to the provisions of Part C below, to wit:

## PART B - Residential Area Covenants

1. USE RESTRICTIONS: All lots in the Subdivision and all lots enlarged or recreated by the shifting of the location of side property lines are restricted to the use of a single family, their household servants and guests, exclusively for residential purposes. Only one residence may be built on one lot. Buildings accessory to the use of one-family living may be erected provided they do not furnish accommodations for an additional family. A construction shed may be placed on a lot and remain there temporarily during the course of active construction of a residence; otherwise no portable or temporary buildings, mobile homes, recreational vehicles or trailers may be placed on a lot.

2. SETBACK RESTRICTIONS: Subject to the exceptions hereinafter mentioned, no building or any part thereof may project beyond setback lines,

RETURN TO:

This instrument prepared by:

Harvey V. Delzer

of

DELZER, EDWARDS, COULTER & PARKER
ATTORNEYS AT LAW
P. O. BOX 279
PORT RICHEY, FLORIDA
33568

(813) 848-8404
OR
(904) 683-1963

as follows:

20 feet from front property lines
10 feet from back property lines
7-1/2 feet from each side boundary or the
distances provided for from time to
time in the lawful zoning ordinances
which are applicable, whichever is
greater.

EXCEPTIONS TO SETBACK RESTRICTIONS:

(a) Terraces, walls, fences and low platforms or steps
may be erected outside of setback lines, provided such
construction shall not interfere with the exposure of
view, or reasonable privacy of adjoining, or facing,
property, as shall be determined by the Architectural
Control Committee hereinafter provided for.

(b) No construction of the type provided in sub-
paragraph (a) may be erected without written approval
of the Architectural Control Committee, and where
construction is within easement areas, it must comply
with provisions of paragraph 5 below.  Subject to
variations because of differences of natural and
finished ground elevations, walls and fences beyond
street setback lines shall not exceed four feet high,
and in other setback areas, six feet in height.

(c) On lakefront lots, only chain link type fences as
approved by the Architectural Control Committee shall
be erected.

3.  ARCHITECTURAL CONTROL:  No building, wall or other structure
or improvement of any nature shall be erected, placed or altered on any
lot until the construction plans and specifications and a plan showing
the location of the structure have been approved in writing by the
Architectural Control Committee.  Each building, wall or other structure
or improvement of any nature shall be erected, placed or altered upon the
premises only in accordance with the plans and specifications and plot
plan so approved.  Refusal of approval of plans, specifications and plot
plan or any of them, may be based on any ground, including purely aesthetic
grounds, which in the sole and uncontrolled discretion of said Architectural
Control Committee shall seem sufficient.  Any change in the exterior appearance
of any building, wall, other structure or improvement shall be deemed an
alteration requiring approval.  The Architectural Control Committee is com-
posed of RICHARD J. DEEB, RICHARD G. DEEB, ALEX R. DEEB and THOMAS P. DEEB.
A majority of the committee may designate a representative to act for it.

the members of the Committee nor its designated representative shall be
entitled to any compensation for services performed pursuant to this covenant.
At such time as the Developer has conveyed all of the lots, the Architectural
Control Committee shall then appoint property owners who shall then become
the Architectural Control Committee and shall have all the powers vested in
said Committee by virtue of these restrictions.

4.  MINIMUM SIZE OF RESIDENCE:  The floor area of a residence shall not
be less than:

1600 sq.ft. of living area on all lakefront lots;

1300 sq.ft. of living area on all other lots.

The Architectural Control Committee retains the power to formulate addi-

5. **EASEMENTS:** Easements for installation and maintenance of utilities and drainage facilities are reserved as shown on the plat, and the Developer hereby reserves a 3 foot easement on the side lot line of each lot for maintenance of utilities and drainage facilities, so that in effect, there will be 3 feet on each side of each lot line, totaling the 6 foot easement for said purposes. Within these easements, no structure, planting or other material shall be placed or permitted to remain which may damage or interfere with the installation and maintenance of utilities, or which may change the direction of flow of drainage channels in the easements, or which may obstruct or retard the flow of water through drainage channels in the easements. The easement area of each lot and all improvements in it shall be maintained continuously by the owner of the lot, except for those improvements for which a public authority or utility company is responsible.

6. **TELEPHONE AND ELECTRIC POWER UNDERGROUND SERVICE:** All buildings on all lots must be served underground by telephone and electric power and gas service.

7. **DRAINAGE:** No changes in elevations of the land shall be made which will cause undue hardship to adjoining property.

8. **NUISANCES:** No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood.

9. **TEMPORARY STRUCTURES:** No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence, either temporarily or permanently.

DELZER, EDWARDS,
COULTER & PARKER
ATTORNEYS AT LAW
P. O. BOX 579
PORT RICHEY, FLORIDA
33568

(813) 846-3404
OR
(904) 683-1993

REC 947 PAGE 331

- Page Three -

STATE OF FLORIDA
COUNTY OF PASCO

I HEREBY CERTIFY that on this 16th day of May, 1978, before me personally appeared    Richard J. Deeb                          and Thomas P. Deeb                    , President and  Vice President respectively of DEEB CONSTRUCTION CO., INC. OF ST. PETERSBURG, FLORIDA, a corporation under the laws of the State of Florida, to me known to be the persons described in and who executed the foregoing instrument, and severally acknowledged the execution thereof to be their free act and deed as such officers, for the uses and purposes therein mentioned; and that they affixed thereto the official seal of said corporation, and the said instrument is the act and deed of said corporation.

WITNESS my signature and official seal at Port Richey, in the County of Pasco and State of Florida, the day and year last aforesaid.

Notary Public
My Commission Expires

Notary Public, State of Florida at Large
My Commission Expires FEB. 12, 1982

2/12/82

DELZER, EDWARDS.

described property has been recorded, agreeing to change said covenants
in whole or in part.

2. ENFORCEMENT:  Enforcement shall be by proceedings at law or in
equity against any person or persons violating or attempting to violate
any covenant either to restrain violation or to recover damages, or both.
Any property owner in said subdivision as well as the Developer shall have
the right to enforce these restrictions, and, in addition, to obtain a r
restraining order and collect damages.  The party violating these restrictions
shall also be responsible for costs and attorneys' fees for the parties
or entities enforcing these restrictions.

3. SEVERABILITY:  Invalidation of any one of these covenants by judgment
or court order shall in no wise affect any of the other provisions which
shall remain in full force and effect.

4. ADDITIONAL RESTRICTIONS:  The Architectural Control Committee may
from time to time, in its sole discretion, modify, amend or add to this
Declaration of Restrictions.

5. WAIVER:  The Architectural Control Committee may waive, upon appli-
cation being made to it, any one or more of the foregoing conditions, restric-
tions, limitations, or agreements, with respect to any designated lot or
lots, upon finding that such waiver would not be detrimental to the subdivi-
sion as a residential area of high standards, but any such waiver, which
must be evidenced in writing, shall not be deemed or construed to be a waiver
of any such conditions, restriction, limitation, or agreement with respect
to any other lot.

6. ASSIGNMENT:  The powers set forth herein are reserved in the Develope
and can be assigned by the Developer to the owners in the subdivision at such
time as, in the discretion of the Developer, it deems it proper and appropriat
to assign rights to the owners or to an organization of the owners.

EXECUTED at Pasco County, Florida, this 16th day of May, 1978.

described property has been recorded, agreeing to change said covenants in whole or in part.

2. ENFORCEMENT: Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or to recover damages, or both. Any property owner in said subdivision as well as the Developer shall have the right to enforce these restrictions, and, in addition, to obtain a r restraining order and collect damages. The party violating these restrictions shall also be responsible for costs and attorneys' fees for the parties or entities enforcing these restrictions.

3. SEVERABILITY: Invalidation of any one of these covenants by judgment or court order shall in no wise affect any of the other provisions which shall remain in full force and effect.

4. ADDITIONAL RESTRICTIONS: The Architectural Control Committee may from time to time, in its sole discretion, modify, amend or add to this Declaration of Restrictions.

5. WAIVER: The Architectural Control Committee may waive, upon application being made to it, any one or more of the foregoing conditions, restrictions, limitations, or agreements, with respect to any designated lot or lots, upon finding that such waiver would not be detrimental to the subdivision as a residential area of high standards, but any such waiver, which must be evidenced in writing, shall not be deemed or construed to be a waiver of any such conditions, restriction, limitation, or agreement with respect to any other lot.

6. ASSIGNMENT: The powers set forth herein are reserved in the Developer and can be assigned by the Developer to the owners in the subdivision at such time as, in the discretion of the Developer, it deems it proper and appropriate to assign rights to the owners or to an organization of the owners.

EXECUTED at Pasco County, Florida, this _16th_ day of May, 1978.

WITNESSES:

DEEB CONSTRUCTION CO., INC.
OF ST. PETERSBURG, FLORIDA

By:

1 of 3
10.50
493.50

THE INSTRUMENT WAS

PREPARED BY AND RETURN TO:

Douglas M. Bales, Esq.
Mason & Associates, P.A.
17757 US Hwy 19 North, Suite 500
Clearwater, FL 33764

Parcel Identification No.: 27-25-16-0020-00000-1390

70,490                The area above this line is for the use of the recording official

RECORD AND RETURN TO: STEWART TITLE OF CLEARWATER    32722 US HIGHWAY 19N, PALM HARBOR, FL 34684

## SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED, executed this **4** day of **OCTOBER**, 1999 by FEDERAL HOME LOAN MORTGAGE CORPORATION, organized and existing under the laws of the United States of America, party of the first part, whose address is 12222 Merit Drive, Suite 700, Dallas, TX, 75251-2277, to STEVEN M. GOURLAY, a single man, party of the second part, whose address is 8649 Forest Lake Drive, Port Richey, FL, 34668.

WITNESSETH, That the said first party, for and in consideration of the sum of $10.00 and other good and valuable considerations in hand paid by the said second party, the receipt whereof is hereby acknowledged, has granted, bargained, transferred and sold unto the said second party forever, all the right, title, interest, claim and demand which the said first party has in and to the following described lot, piece or parcel of land, situate, lying and being in the County of Pasco, State of Florida, to wit:

LOT 139, FOREST LAKE ESTATES, AS RECORDED IN PLAT BOOK 16, PAGES 18 THROUGH 20, INCLUSIVE, OF THE PUBLIC RECORDS OF PASCO COUNTY, FLORIDA.

Subject to easements, restrictions and reservations of record

TO HAVE AND TO HOLD the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of the said first party, either in law or equity, to the only proper use, benefit and behoof of the said second party forever.

AND, Grantor covenants with Grantee that, except as noted above, at the time of the delivery of the deed the premises were free from all encumbrances made by Grantor and that Grantor will warrant and defend against the lawful claims and demands of all persons claiming by, through or under Grantor, but against none other.

1 of 3

EXHIBIT "B"

IN WITNESS WHEREOF, Thee said first party has signed and sealed these presents. the day and year first above written.

Signed, sealed and delivered
in the presence of

Jean Norris
Witness

Jean Norris
Witness Print Name

Phyllis A. Bittel
Witness Print Name

FEDERAL HOME LOAN MORTGAGE CORPORATION

by: _____
Attorney-in-fact for FHLMC by P.O.A. dated
2/22/99 and recorded in Public Records

STATE OF FLORIDA

COUNTY OF PINELLAS

I HEREBY CERTIFY THAT BEFORE ME personally appeared Douglas C. Bales, as Attorney-in-fact for FEDERAL HOME LOAN MORTGAGE CORPORATION who is authorized to sign on behalf of same, who did not take an oath and who is personally known to me to be the individual described in and who executed the foregoing deed of conveyance, and acknowledged before me that they executed the same for the purposes therein expressed

WITNESS my hand and official seal in the county and state last aforesaid this 4 day of October , 1999.

My Commission Expires:

Jean Norr.
Notary Public

OFFICIAL NOTARY SEAL
JEAN NORRIS
COMMISSION NUMBER
CC589646
MY COMMISSION EXPIRES
SEPT 26.2000