# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVEN M. GOURLAY and CORRINNA
K. DELAWTER-GOURLAY,

<b>Plaintiffs,</b>

v.                                          Case No. 8:02-cv-1955-T-30TGW

FOREST LAKE ESTATES CIVIC
ASSOCIATION OF PORT RICHEY, INC.,
and WALTER A. LUCAS,

<b>Defendants.</b>

---

# ORDER

THIS CAUSE comes before the Court upon Forest Lake Estates Civic Association of Port Richey, Inc.'s ("FLECA") Dispositive Motion for Summary Judgment and Memorandum of Law in Support Thereof (Dkt. #39) and Plaintiffs' response in opposition (Dkt. #52) thereto. After close consideration, this Court concludes that summary judgment should be granted in part.

## I.   BACKGROUND

This is an action brought under the federal Fair Housing Act, 42 U.S.C. § 3601, et seq. (the "FHA") and Florida's Fair Housing Act, Fla. Stat. § 760.20, et seq. (the "FFHA"), against a homeowner's association and the vice president of that association for alleged housing discrimination based on familial status. In October 1999, Steven Gourlay purchased a house in the Forest Lakes Estates neighborhood. The Forest Lakes Estates neighborhood



has a voluntary homeowner's association, FLECA, which was assigned the right to enforce deed restrictions by the developer of the Forest Lakes Estates neighborhood. At all times relevant to this case, Walter Lucas ("Lucas") was an officer or director of FLECA authorized to act on its behalf.

After moving into their home, Plaintiffs became licensed foster parents[1] and a varying number of foster children were placed in their home. In 2001, Plaintiffs installed playground equipment in their backyard. In the fall of 2001, FLECA and Lucas received complaints from some of Plaintiffs' neighbors regarding the playground equipment and the state of Plaintiffs' yard. Lucas contacted Plaintiffs about the complaints. Lucas asked Plaintiffs to install shrubs or a tarp to block the neighbors view to end the neighbors' complaints. In response, Plaintiffs installed a tarp, blocking the view into their backyard.[2]

Over a year later in the fall of 2002, FLECA and Lucas received additional complaints about the numbers of children playing at Plaintiffs' home and the state of Plaintiffs' yard. Additionally, some neighbors speculated that Plaintiffs were operating a daycare out of their home.[3] In September 2002, Corinna Gourlay approached Lucas about widening or adding an additional driveway to the Plaintiffs' home for a new van. During this conversation,

---

[1] In addition, Plaintiffs have four biological children.

[2] In June 2002, FLECA's newsletter written by Lucas contained the following statement regarding vandalism: "I think you have to agree with me that this was done by some underprivileged and misunderstood kids who did not know who their daddy was _____." There is no evidence in the record that Lucas in June 2002 knew that Plaintiffs had foster children.

[3] Previously, another resident Forest Lake Estates had attempted to open a daycare out of their house. FLECA prevented the continued operation of that daycare.

Lucas first became aware that Plaintiffs had foster children living in their home. The parties dispute what was said in that conversation. According to Corinna Gourlay, Lucas told her that he would not approve the widening of the driveway until after the foster children issue was resolved. According to Lucas, he told Corinna Gourlay that any widening of the driveway would require approval of FLECA's architectural committee and he would drop off a form to get the committee's approval, which he later did. He also told Corinna Gourlay that he would have to look into the foster children issue and was glad that Plaintiffs were not operating a daycare.

On September 18, 2002, several days after the Corinna Gourlay-Lucas conversation, FLECA sent a letter through its lawyer, Donald Peyton, to Steven Gourlay, indicating that FLECA believed Plaintiffs violated and were violating several deed restrictions, including: (a) a single family restriction that allowed for up to five unrelated persons to reside in a house; and (b) by installing structures on Plaintiffs' property without architectural committee approval. The demand letter requested a written response and assurances of future compliance from Steven Gourlay or FLECA would commence litigation.

Plaintiffs never responded to Peyton's letter in writing. On September 19, 2002, however, Corrina Gourlay called Peyton and was told that the single family restriction required Plaintiffs to remove the foster children from their home. Several days later, Steven Gourlay went to a FLECA meeting to discuss widening his driveway. According to Steven Gourlay, he discussed with Lucas the foster children issue. Lucas purportedly asked Gourlay

"what would this neighborhood be like if everybody had foster kids . . . ." Lucas's version of the conversation is different, but he agrees that the foster children were discussed.[4]

On October 7, 2002, FLECA filed a declaratory judgment action in state court against Steven Gourlay, seeking a determination of FLECA and Steven Gourlay's rights and responsibilities under the deed restrictions (the "State Court action"). The State Court action sought a determination of whether Steven Gourlay violated the single family deed restriction by allowing more than five unrelated people to live together in Plaintiffs home.[5] The State Court action also sought a determination of whether Gourlay violated the deed restrictions by installing playground equipment without architectural committee approval. The State Court action did not seek to evict Plaintiffs or their foster children and did not seek any other form of declaratory or injunctive relief.

On October 22, 2002, the Gourlays filed a five count complaint in this Court, seeking damages and injunctive relief for violations of the FHA, the FFHA, and for selective

---

[4]In addition, Plaintiffs argue that FLECA took pictures of their children playing and that constituted harassment. According to Lucas, one of the Plaintiffs' neighbors took pictures of Plaintiffs' children playing and the state of Plaintiffs' yard. There is no evidence that the neighbor (who has since moved) was authorized by FLECA or Lucas to take the pictures. Plaintiffs did not file the deposition of that neighbor, and there is nothing in the record, except for Plaintiffs conjecture and supposition, that FLECA authorized, ratified, or otherwise supported the neighbor taking pictures of Plaintiffs' children.

[5]Peyton is quoted in a local newspaper around the time that the State Court action was filed as saying that Plaintiffs were "making a business of taking in foster children" and "I understand they are doing it [taking in foster children] for free or out of love, that it's a business." Peyton denied making the former statement, but not the later statement.

enforcement of the deed restrictions.  Plaintiffs claimed that FLECA and Lucas violated the FHA and FFHA by:

(1) denying them the use and enjoyment of their residence because of their familial status;

(2) constructively making their residence unavailable because of their familial status;

(3) discriminating against them in their provision of services or facilities because of their familial status;

(4) printing, publishing, or causing to be made, printed, or published a notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or an intention to make such a preference, limitation, or discrimination;

(5) harassing them and attempting to force them out of their home; and

(6) coercing, intimidating, threatening, and interfering with Plaintiffs' exercise and enjoyment of their housing rights.

Meanwhile, Steven Gourlay filed a motion to dismiss the State Court action.  On January 6, 2003, the judge in the State Court action partially granted Steven Gourlay's motion to dismiss.  The State Court judge denied Gourlay's motion to dismiss that portion of the complaint, which alleged that Gourlay violated the deed restrictions by installing playground equipment in his backyard.  The State Court judge dismissed that portion of the State Court action, which alleged that Steven Gourlay violated the single family residence

restriction.  The State Court judge reasoned that FLECA had not alleged that the five unrelated persons did not have some other legal familial relationship, like adoptees.  The complaint, therefore, did not sufficiently plead a violation of the single family restriction. The state court gave FLECA leave to amend its complaint.

On January 13, 2003, FLECA deposed Steven Gourlay.[6]  On January 14, 2003, FLECA voluntarily dismissed the State Court action.  The Notice of Voluntary Dismissal indicates that Steven Gourlay had corrected the remaining deed restriction violations related to the playground equipment.  Additionally, the notice indicates that FLECA became satisfied at Gourlay's deposition that the unrelated children in Plaintiffs' home were foster children.

## II.  SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action

---

[6]Gourlay's deposition had been delayed from November to January by his attorneys, and was purportedly compelled by the state court.

will identify which facts are material. See id. Throughout this analysis, the district court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. See id. at 255.

This Court may not decide a genuine factual dispute at the summary judgment stage. See Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. See Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## III.    LEGAL ANALYSIS

This Court concludes that summary judgment is appropriate in part. While FLECA's motion is phrased as an evidentiary challenge, it is clear that FLECA seeks this Court to interpret the FHA and the FFHA.[7] Specifically, FLECA argues that: (1) because no sale,

---

[7]Courts interpreting the FFHA have utilized the interpretation by federal courts of the almost identically worded FHA. See Loren v. Sasser, 309 F.3d 1296, 1299 n. 9 (11th Cir. 2002); Dornbach v. Holley, ___ So. 2d ___, 2002 WL 31875013, at *2 (Fla. 2d DCA Dec. 27, 2002). This Court will construe FFHA and FHA together because of the similarity in language and purpose of the two statutes. Cf. Byrd v. Richardson-Greenshields Securities, Inc., 552 So. 2d 1099, 1102 (Fla. 1989) (construing Title VII and the Florida Civil Rights Act together); Fla. Dep't of Community Affairs v. Bryant, 586 So. 2d 1205 (Fla. 1st DCA 1991) (same); Resley v. Ritz-Carlton Hotel Co., 989 (continued...)

rental, or eviction occurred 42 U.S.C. § 3604(a)-(c) cannot be violated; and (2) there was no actionable interference by FLECA under 42 U.S.C. § 3617.

In interpreting statutes, a court is to begin the construction of a statutory provision with the words of that provision. See Jackson v. State Bd. of Pardons and Paroles, 331 F.3d 790, 794-95 (11th Cir. 2003); CBS, Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001). If the plain meaning of the provision is unambiguous, then the judicial inquiry is complete. See Jackson, 331 F.3d at 794. In the absence of a definition in a statute, courts look to dictionary definitions to ascertain the plain meaning of a word from its ordinary usage. See id. at 795.

If the plain meaning of a provision is not "entirely transparent," a court is to resort to the cannons of construction to determine the meaning of a statutory provision by focusing on the broader, statutory context. See CBS, Inc., 245 F.3d at 1225. Several cannons of construction are useful in this case. First, when Congress includes particular language in one provision of a statute but omits that same language in another section of the same statute, it is presumed that Congress intentionally excluded the omitted language. See id. at 1225-26 (citing to Russello v. United States, 464 U.S. 16, 23 (1983)). Second, courts are to interpret statutes in a manner that avoids constitutional difficulty.[8] See Cable Holdings of Georgia,

---

[7](...continued)
F.Supp. 1442, 1446-47 (M.D. Fla. 1997) (same).

[8]Indeed, this cannon of statutory construction is explicitly embedded in the declaration of policy section of the FHA. Section 3601 of the FHA states that "[i]t is the policy of the United
(continued...)

Inc. v. McNeil Real Estate Fund VI, Ltd., 953 F.2d 600, 604 (11th Cir. 1992); United States v. Brown, 731 F.2d 1491, 1494 (11th Cir. 1984); also Frisby v. Schultz, 487 U.S. 474, 483 (1988) (holding that lower courts run "afoul" of a well established principle of statutory interpretation when they fail to avoid constitutional difficulties and broadly interpret a statute). Third, when a general term in a statute follows a specific one, the general term should be understood as a reference to and in the context of the specific term. See Norfolk & W.R. Co. v. American Train Dispatchers, Ass'n, 499 U.S. 117, 129 (1991).

In the event that any provision of a statute is ambiguous, this courts is to defer to an administering agency's reasonable interpretation of that provision. See Meyer v. Holley, 537 U.S. 280, ___, 123 S.Ct. 824,  830 (2003); Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984). In 1989, Congress enacted the Fair Housing Amendments Act of 1988, which amended the FHA. As part of those amendments, Congress authorized the Department of Housing and Urban Development ("HUD") to issue regulations to interpret the FHA, which HUD subsequently issued.

## A.   INTERPRETATION OF SECTION 3604(a) OF THE FHA

Section 3604(a) makes it unlawful: "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make

---

[8](...continued)
States to provide, within constitutional limitations, for fair housing throughout the United States. 42 U.S.C.§ 3601 (emphasis added).

unavailable or deny, a dwelling to any person because of . . . familial status . . . ."[9] 42 U.S.C. § 3604. Both parties ask this Court to interpret the phrase "otherwise make unavailable." Plaintiffs argue that the phrase "otherwise make unavailable" should be broadly construed to include any housing practice that discriminates because of a protected classification, including discriminatory practices aimed at the use and enjoyment of a dwelling owned by a protected person. FLECA argues that the phrase only makes unlawful practices that make a dwelling unavailable for sale or rent.

After close consideration, this Court concludes that "otherwise makes unavailable" makes unlawful any housing practice that affects the availability of housing because of a protected classification. First, while not cited by either party, the Eleventh Circuit has previously considered the meaning of the phrase "otherwise makes unavailable" under Section 3604(a). See Jackson v. Okaloosa County, 21 F.3d 1531, 1542 (11th Cir. 1994).

In that case, the Eleventh Circuit held that a plaintiff had stated a claim under Section 3604(a) by alleging that a discriminatory county policy prevented integration of the community and promoted segregated housing. See id. The Eleventh Circuit stated that the "otherwise make unavailable" language prohibited discriminatory practices that affect the availability of housing, like racial steering, adoption of restrictive zoning laws, or insurance redlining. See id. While the examples listed by the Eleventh Circuit are not exhaustive, the

---

[9]The almost identically worded section of the FFHA reads: "[i]t is unlawful to refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of . . . familial status . . . ." Fla. Stat. § 760.23(1).

examples are illustrative of the conduct prohibited under Section 3604(a), which is discriminatory conduct that directly impacts a plaintiff's ability to locate in an area or obtain housing and not conduct that just allegedly interferes with the use or enjoyment of a dwelling after that dwelling is purchased.[10]

Second, other courts in and outside of this circuit, likewise, have concluded that Section 3604(a) only prohibits discriminatory conduct that directly impacts a plaintiff's ability to locate in an area and/or secure housing.  See Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 343-46 (6th Cir. 1994) (concluding that neighbors were not liable for bidding against protected group even though their bid was motivated by discriminatory animus); Clifton Terrace Assocs., Ltd. v. United Technologies Corp., 929 F.2d 714, 719 (D.C. Cir. 1991) (holding that the FHA addresses problems of housing availability not problems of housing habitability); Southerland Neighborhood Improvement Assoc. v. St. Clair County, 743 F.2d 1207, 1210 (7th Cir. 1984) (concluding that the FHA does not protect "intangible interests in . . . already-owned property"); Hall v. Lowder Realty

---

[10]Put another way, Section 3604(a) prevents discriminatory conduct that directly deprives protected persons housing opportunities.  See Clifton Terrace Assoc., Ltd. v. United Technologies Corp., 929 F.2d 714, 719 (D.C. Cir. 1991) (holding no Section 3604 violation when elevator refused to repair elevator in housing project); also Michigan Protection and Advocacy Service, Inc. v. Babin, 799 F.Supp. 695, 713 (E.D. Mich. 1992), aff'd 18 F.3d 337 (6th Cir. 1994) (holding under an identical provision contained in Section 3604(f)(1) that neighbors could not violate FHA).

Plaintiffs have failed to show any evidence that FLECA directly deprived a protected person a housing opportunity.  There is no evidence that FLECA was involved in anyway in any real estate transactions or was affiliated with a broker, real estate agent, appraiser, or home insurer.  There is no evidence that FLECA is consulted in anyway by the City or County in zoning or building permits.  FLECA provides no services, except for maintenance of common areas.

Co., 160 F. Supp. 2d 1299, 1319-20 (M.D. Ala. 2001) (granting summary judgment against FHA plaintiff because that plaintiff had not shown that the alleged discriminatory conduct affected the availability of housing); Miller v. City of Dallas, case no. 3:98-cv-2955-D, 2002 WL 230834, at *12-13 (N.D. Tex. Feb. 14, 2002) (granting summary judgment on Section 3604(a) claim for similar reasons).

Third, to the extent that Jackson and the other cases cited do not adequately address the definition of "otherwise make unavailable" under the factual situation presented in this case, an analysis of the plain meaning of the text at issue counsels against the tortured reading that Plaintiffs propose. "Unavailable" means not "accessible or capable of being obtained." See Webster's Third New Int'l Dictionary (1993). To otherwise make a dwelling unavailable, therefore, means to make not capable of being obtained or accessed, implying that the protected person has not yet purchased a dwelling.[11] Nothing in the language of Section 3604(a) implies protection against alleged discrimination in the use or enjoyment of a dwelling years or decades after a dwelling is purchased.

Fourth, any lack of transparency in this phrase is resolved by using the statutory rules of construction. The context of the phrase occurs in a provision that involves real estate or prospective real estate transactions. The general phrase "otherwise makes unavailable"

---

[11]In the rental context, to "otherwise make unavailable" may have a broader reading. As periodically, the rental of a dwelling would need to be renewed and a landlord and tenant have an ongoing relationship that a purchaser and seller do not have. This would make activities by a landlord or others actionable after the rental of a dwelling. This Court need not define provision the precise line in such a case, because this Court does not have before it a protected person claiming discriminatory rental practices.

should be interpreted with reference to these more specific phrases. It should, therefore, be limited to practices that affect a protected persons opportunity to obtain a dwelling or housing in an area.

Additionally, if Section 3604(a) already included discrimination based on use or enjoyment of a purchased dwelling, Congress would not have needed to codify Section 3604(f)(3),[12] which prohibits discrimination against disabled persons affecting their use or enjoyment of a dwelling, because that protection would have already existed. This Court is not to construe a provision of a statute to be surplusage, and Congress's intentional omission of use and enjoyment language from Section 3604(a), while using it 3604(f)(3)(B), means that Congress did not intend protection of use and enjoyment under Section 3604(a).[13]

Further, this Court is concerned that to construe Section 3604(a) as broadly as Plaintiffs' request would potentially run afoul of the First Amendment. For example, Plaintiff's argument suggests that under Section 3604(a) any discriminatory comment or

---

[12]Section 3604(f)(1) is almost identical to Section 3604(a). Section 3604(f)(3) states in relevant part: "[f]or purposes of this subsection [the separate subsection on handicap discrimination], discrimination includes -- . . . (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B) (emphasis added).

[13]Congress when it amended the FHA in 1988 and included the extra language in Section 3604(f)(3) defining discrimination in the disability context. The protection given in that section by Congress seems to have given greater protection to disabled individuals after the sale or rental of a dwelling than other protected groups. For this reason, Plaintiffs' citations to Advocacy Center for Persons with Disabilities, Inc. v. Woodlands Estates Ass'n and Schroeder v. De Bertolo are distinguishable and do not persuade this Court that similar rights exist for other protected classifications. Woodlands Estates, 192 F. Supp. 2d 1344, 1346 (M.D. Fla. 2002); Schroeder, 879 F. Supp. 173, 176-77 (D.P.R. 1995).

epithet made by any person could be actionable, if it in any way restricted that persons use or enjoyment of their home.[14]  Generally, the First Amendment protects a party who files a court proceeding or otherwise publicly speaks about a neighbor, even if that conduct is motivated by discriminatory animus.  See, e.g., White v. Lee, 227 F.3d 1214, 1232-37 (9th Cir. 2000) (holding that First Amendment protected neighbors from FHA investigation unless they threatened imminent lawless action or filed objectively baseless lawsuits); Advocacy Center for Persons With Disabilities, Inc., 192 F. Supp. 2d 1344, 1350 (M.D. Fla. 2002) (holding no First Amendment protection for a frivolous lawsuit); U.S. v. Wagner, 940 F. Supp. 972, 980 (N.D. Tex. 1996); Michigan Protection and Advocacy Service, Inc. v. Babin, 799 F. Supp. 695, 717-22 (E.D. Mich. 1992), aff'd on other grounds 18 F.3d 337 (6th Cir. 1994).  This Court chooses to avoid the serious constitutional questions raised by Plaintiffs' interpretation of Section 3604(a), and instead interpret Section 3604(a) more narrowly and require some connection to or impact on the availability of housing.

Finally, to the extent that Section 3604(a) is ambiguous, HUD has promulgated a regulation interpreting both Sections 3604(a).[15]  See 24 C.F.R. § 100.70.  As part of that regulation, HUD listed examples of prohibited conduct.  See 24 C.F.R. § 100.70(c)-(d).

---

[14]As an initial matter, this Court finds that the FHA was passed to ensure fairness and equality in housing, see 42 U.S.C. § 3601, not to become some all purpose civility code regulating conduct between neighbors.

[15]As discussed *infra*, Section 3604(b) prohibits discrimination in the provision of services or facilities or in the terms and conditions of a sale or rental.  42 U.S.C. § 3604(b).

While this list is not exhaustive, none of the prohibited activities listed deals with a protected persons use or enjoyment of a dwelling after purchase.[16]

Based upon the foregoing analysis, this Court limits Section 3604(a) to conduct that directly impacts the accessibility to housing because of a protected classification.[17] While this Court in no way condones or adopts the allegedly ill-advised comments and actions undertaken by FLECA, its officers, and agents, Plaintiffs produced no evidence that any of the actions taken by FLECA made their dwelling inaccessible for purchase, sale or rent. Similarly, Plaintiffs produced no evidence that FLECA involved itself or will involve itself in any potential real estate transaction because of familial status or any other protected category. The only alleged discriminatory conduct by FLECA occurred three years after the

---

[16]Instead, the prohibited practices listed include the following when done because of a protected classification: (a) discouraging a person from inspecting, purchasing, or renting a dwelling; (b) discouraging a purchase or rental by exaggerating drawbacks or failing to inform a person of desirable features of a dwelling; (c) communicating to any prospective purchaser that they are not compatible with or would not be comfortable in a community; (d) assigning persons to any area or floor; (e) discharging a broker, agent, or employee because they refuse to engage in discriminatory conduct; (f) employing codes or devices to segregate or reject purchasers or renters; (g) denying or delaying the processing of an application; (h) refusing to supply municipal services or insurance. 24 C.F.R. § 100.70(c)-(d).

[17]Section 3604(a) could potentially also extend to actions that actually evict or have the affect of evicting a protected person from a dwelling. Plaintiffs have not provided any evidence that FLECA attempted to actually evict them from their house or attempted through use of injunctive or some other form of relief to remove them or their foster children from the home. A review of the State Court complaint clearly shows that the declaratory relief sought by FLECA sought a determination of the parties' rights and responsibilities under the deed restrictions and not the eviction of Plaintiffs.

Likewise, Section 3604(a) would apply, if FLECA attempted to block the sale or purchase of a dwelling by enforcing deed restrictions. See, e.g., United States v. Scott, 788 F. Supp. 1555 (D. Kan. 1992).

purchase by the Plaintiffs of their home, and this conduct did not "otherwise make unavailable" the Plaintiffs' home. Therefore, FLECA cannot be liable to Plaintiffs under 42 U.S.C. § 3604(a) or Fla. Stat. § 760.23(1).[18]

## B.    INTERPRETATION OF SECTION 3604(b) OF THE FHA

Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status."[19] Both parties seem to miss the obvious issue, given their argument on Section 3604(a). Instead of arguing that the phrase "in connection therewith" limits Section 3604(b) to the discriminatory provision of services or facilities in connection with a sale, the parties argue whether Plaintiffs needed to be evicted to violate Section 3604(b).

---

[18]Even if this Court were to interpret Section 3604(a) in the manner that Plaintiffs suggest, Plaintiffs' have not produced any evidence of discrimination. First, the fact that a neighbor, who is not a party to this suit, took pictures of their children does not indicate discrimination based on familial status. Plaintiffs' rely solely on their own speculation and conjecture that the photographs were taken at FLECA or Lucas's request. Similarly, Plaintiffs produced no evidence that FLECA or Lucas's request that a tarp be installed was the result of discrimination based on familial status. It is undisputed that Lucas in 2001 was unaware that Plaintiffs had foster children. Even if he knew about Plaintiffs' foster children, requiring a tarp at best may be circumstantial evidence of discrimination, but Plaintiffs have failed to demonstrate that any other resident of Forest Lakes Estates with similar structures was treated differently than Plaintiffs. The only remaining alleged discriminatory conduct is FLECA's sending a demand letter and filing the State Court action. As discussed *infra*, this Court cannot conclude based on the record before it that the State Court action was objectively baseless and not entitled to First Amendment protection.

[19]The almost identically worded section of the FFHA reads: "[i]t is unlawful to discriminate against any person in the terms, conditions, or privileges of a sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status . . . ." Fla. Stat. § 760.23(2).

This Court need not reach the question of whether Plaintiffs needed to be evicted to violate Section 3604(b), because this Court concludes that Section 3604(b) only prohibits the discriminatory provision of services and facilities in connection with a sale of a dwelling. The context of the use of the phrase "in connection therewith" clearly limits claims for discriminatory provision of services to the provision of those services in connection with a sale, because the preceding sentence mentions only the sale or rental of a dwelling.[20] Additionally, Congress would not have needed to codify Section 3604(f)(3) because that protection would have already existed in Section 3604(f)(2), which is almost identical to Section 3604(b).[21] This Court is not to construe a provision of a statute to be surplusage, and Congress's intentional omission of use and enjoyment language from Section 3604(b) while using it in Section 3604(f)(3) means that Congress did not intend that type of protection under Section 3604(b).

Additionally, several courts have concluded that "services" under 3604(b) applies to discrimination in the provision of services that preclude ownership. See Southend, 743 F.2d at 1210; Halprin v. The Prairie Single Family Homes of Dearborn Park Ass'n, 208 F. Supp. 2d 896, 901 (dismissing complaint involving a claim that homeowner's association enforcement of restrictive covenants was a "service"); also Clifton Terrace Assocs., 929 F.2d

---

[20]In connection with a rental, the plain meaning of Section 3604(b) would likely extend past the initial rental of a dwelling in a similar fashion to Section 3604(a).

[21]Section 3604(f)(3) states that discrimination includes a failure to make reasonable accommodations or modifications in rules, policies, practices, or services and to the premises themselves to allow for the full enjoyment and use of a dwelling.

at 720 (differentiating in the rental context between municipal services and services provided by other entities).

Finally, this Court is unclear what "service" was allegedly denied to Plaintiffs because Plaintiffs failed to indicate what service was denied to them in their response to FLECA's motion for summary judgment. This Court would speculate that the "services" that Plaintiffs complain about is FLECA's alleged denial of the additional or widened driveway or the enforcement by FLECA of the deed restrictions. "[S]ervices" as used in Section 3604(b), however, would not include rules, policies, or practices of FLECA. This Court reaches this determination because to construe "services" so broadly would render part of Section 3604(f)(3)(B) to be surplusage. Section 3604(f)(3)(B) makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services . . . ." Congress would not have needed to include rules, policies or practices in Section 3604(f)(3)(B), if these terms were already included within the term "services."

Because Plaintiffs the alleged discriminatory misconduct by FLECA occurred nearly three years after the Plaintiffs purchased their house and there is no evidence that any discriminatory conduct precluded Plaintiffs' ownership of a dwelling, this Court concludes that FLECA cannot be liable to Plaintiffs under 42 U.S.C. § 3604(b) or Fla. Stat. § 760.23(2).

## C.    INTERPRETATION OF SECTION 3604(c) OF THE FHA

Section 3604(c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental

of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination."[22] FLECA argues that Section 3604, like Section 3604(a), requires either a purchase or rental of a dwelling or a prospective purchase or rental of a dwelling.

The plain language of Section 3604(c) indicates that to create liability either a sale or rental of a dwelling needs to occur or at least be potentially occurring. Most courts that have considered this issue have concluded that the plain meaning of Section 3604(c) require a sale or rental or prospective sale or rental. See, e.g. Halprin, 208 F. Supp. 2d at 901-02 (listing cases); Lowder Realty Co., 160 F. Supp. 2d at 1320-21; United States v. Space Hunters, Inc., case no. 00-civ-1781, 2001 WL 968993, at *5 (S.D.N.Y. Aug. 24, 2001) (dismissing Section 3604(c) claim because statements must be about a dwelling that is being sold or rented and must be said by someone having a connection to the transaction); Michigan Protection and Advocacy Service, 799 F. Supp. at 716 (holding similarly). HUD's regulation interpreting Section 3604(c) confirms this Court's and other courts interpretation. See 24 C.F.R. § 100.75. The HUD regulation suggests that Section 3604(c) is limited to discriminatory advertisements, statements, and notices related to a sale or rental of a property. See id.

---

[22]The almost identically worded section of the FFHA reads:

[i]t is unlawful to make print, or publish, or cause to be made printed, or published, any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination.

See Fla. Stat. 760.23(3).

Based on the foregoing, this Court concludes that there was no violation of Section 3604(c) or Fla. Stat. § 760.23(3) because any alleged discriminatory conduct was not in connection with a sale or rental or potential sale or rental of Plaintiffs' dwelling.[23]

### D.   INTERPRETATION OF SECTION 3617 OF THE FHA

Section 3617 makes it unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.[24]

The Eleventh Circuit, unlike most courts, has concluded that Section 3617 does not require proof of violation of Sections 3603-3606 in order to create liability. See Sofarelli v. Pinellas County, 931 F.2d 718, 722 (11th Cir. 1991); but see Frazier v. Rominger, 27 F.3d 828, 834 (2d Cir. 1994) (holding that Section 3617 is limited to violations of Sections 3603-3606). Under the Eleventh Circuit's interpretation, it appears that liability exists if a plaintiff can demonstrate that: (1) a defendant coerced, intimidated, threatened, or interfered; (2) with a: (a) plaintiff's exercise of a right under Sections 3603-3606; (b) plaintiff's enjoyment of a

---

[23]This Court will also grant summary judgment on Count V (Selective Enforcement) of Plaintiffs' complaint. Plaintiffs have produced no evidence that a similarly situated resident of Forest Lakes Estates was treated any differently than Plaintiffs.

[24]The almost identically worded section of the FFHA reads: "[i]t is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under ss. 760.20-760.37."

housing right after exercise of that right; or (c) plaintiff's aid or encouragement to a protected person to exercise or enjoy a housing right; (3) because of discriminatory animus.  <u>See</u> <u>Sofarelli</u>, 931 F.2d at 721-23.  Therefore, Section 3617 regulates discriminatory conduct before, during, or after a sale or rental of a dwelling.[25]

In this case, summary judgment hinges on the meaning this Court gives to the phrase "to coerce, intimidate, threaten, or interfere."  The plain meaning of the first three words, coerce, intimidate, and threaten, requires either violent conduct or threatening conduct.[26]  The fourth word of this phrase, interfere, is more general and could conceivably extend broadly to any conduct that limits a protected persons use or enjoyment of a dwelling.  Under the cannons of statutory construction, however, the general word interfere should be interpreted in reference to and in context with the first three words of this provision.  This Court concludes that the use of the phrase "interference" in Section 3617 extends only to discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights.

The cases that have discussed Section 3617 independently of a violation of Sections 3603-3606 have all required this level of conduct.  For example, in <u>Sofarelli</u>, the Eleventh Circuit stated that "leaving a note threatening 'to break [Sofarelli] in half' if he did not get

---

[25]The Eleventh Circuit's interpretation is consistent with the plain language of Section 3617 and confirmed by the interpretation made of Section 3617 by HUD.  <u>See</u> 24 C.F.R. § 100.400.

[26]Threatening conduct would include conduct that either physically threatens a person or economic threats, like you will be fired from a job.

out of the neighborhood and running up to one of Sofarelli's trucks, hitting it, shouting

obscenities and spitting at Sofarelli" along with making racial slurs in a newspaper were

actionable under Section 3617.  931 F.2d at 722.  Other courts have found similar behavior

that's designed to drive a protected person out of a dwelling or neighborhood to be

actionable.  See United States v. Pospisil, 127 F. Supp. 2d 1059, 1062-63 (W.D. Mo. 2000)

(concluding summary judgment should be denied on a Section 3617 claim because defendant

had engaged in cross burning); Egan v. Schmock, 93 F. Supp. 2d 1090, 1092-93 (N.D. Cal.

2000) (dismissing Section 3617 claim because plaintiffs had not alleged discriminatory

conduct was aimed at driving plaintiffs out of their home); United States v. Weisz, 914 F.

Supp. 1050 (S.D.N.Y. 1996) (dismissing complaint that contained only a couple of

allegations of religious based discrimination between feuding neighbors).[27]  These cases

suggest that to constitute actionable coercion, harassment, intimidation or interference the

discriminatory conduct, in the absence of a violation of sections 3603-3606, must be severe

---

[27]also Bryant v. Polston, case no. 00-1064, 2000 WL 1670938, at *2-3 (S.D. Ind. Nov. 2, 2000) (finding threats of physical violence including with a gun and continuous racially derogatory remarks to state a cause of action under Section 3617); Ohana v. 180 Prospect Place Realty Corp., 996 F. Supp. 238 (E.D.N.Y. 1998) (denying motion to dismiss Section 3617 claim involving threats of violence, stalking, repeated use of anti-Semitic epithets, and creation of noise disturbances); Johnson v. Smith, 810 F. Supp. 235, 236-39 (N.D. Ill. 1992) (racially motivated conspiracy that included cross burning actionable); Stirgus v. Benoit, 720 F.Supp. 119 (N.D. Ill. 1989) (firebombing of plaintiff's house actionable); Seaphus v. Lilly, 691 F. Supp. 127 (N.D. Ill. 1988) (repeated acts of vandalism actionable).

(i.e. violence or threats of violence) and/or pervasive similar to the discriminatory conduct necessary under Title VII to support a hostile work environment claim.[28]

Such an approach is appealing and makes sense to this Court for several reasons. First, other courts have already imported other aspects of Title VII into the FHA.[29] Second, such an approach avoids the FHA becoming an all purpose cause of action for neighbors of different races, origins, faiths, or with different types or concepts of families to bring neighborhood feuds into federal court when the dispute has little or no actual relation to housing discrimination. Third, this Court has serious constitutional concerns in a case like this case where, arguably, Plaintiffs are trying to regulate speech because of its emotive impact on the Plaintiffs. If this Court applies Title VII standards, this concern is lessened because the Supreme Court has repeatedly upheld or cited Title VII as a permissible content neutral regulation of conduct under the First Amendment. See Wisonsin v. Mitchell, 508 U.S. 476, 487-489 (1993); R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 389 (1992); Hishon v. King & Spaulding, 467 U.S. 69, 78 (1984).

---

[28]None of the cases cited apply that standard, because most of the reported decisions involved motions to dismiss.

[29]See, e.g., DiCenso v. Cisneros, 96 F.3d 1004, 1008 (7th Cir. 1996) (applying Title VII standards to FHA sexual hostile work environment claim); Huntington Branch, NAACP v. City of Huntington, 844 F.2d 926, 938-40 (2d Cir. 1988) (applying Title VII disparate impact standards in FHA case); Michigan Protection and Advocacy Service, Inc. v. Babin, 799 F. Supp. 695, 706 (E.D. Mich. 1992) aff'd 18 F.3d 337 (6th Cir. 1994) (importing McDonnell Douglas burden shifting into FHA case and citing other cases that have used such an approach).

In this case, the question of whether the discriminatory conduct is severe and pervasive is a close call because: (a) no violence or property damage occurred; (b) there was no threat of violence or imminent lawless action by FLECA; (c) the number, content, and context of discriminatory statements in the record is much more limited and less offensive[30] than in the cases cited above; and (d) the one alleged discriminatory action is the filing of a lawsuit.[31]   Neither party, however, has applied or argued the facts of this case under this standard.   Similarly, neither party has briefed the extent that the First Amendment would protect FLECA's public statements and right to file a lawsuit.   This Court will defer further consideration of this motion to allow the parties to submit additional briefs on these issues.[32]

It is therefore **ORDERED AND ADJUDGED** that:

1.      The Motion for Summary Judgment (Dkt. #39) is **GRANTED in part** and **DEFERRED in part** as detailed in this Order.

2.      This Court believes that in the wake of this Order, mediation may resolve the remaining issues in this dispute.   This case is hereby referred to the Court-Annexed

---

[30]The statements are still offensive, if true, but do not contain profanities, vulgarities, or even slurs or epithets that are present in the cases cited above.

[31]Plaintiffs also cite to a statement in a FLECA newsletter written by Lucas prior to Lucas knowing that Plaintiffs had foster children.   As a matter of law, Lucas could not have been coercing, intimidating, threatening or interfering with Plaintiffs enjoyment of their housing rights when he wrote it, because he was not aware that Plaintiffs even had exercised such a right.   This is not to say that if this case goes to trial, Plaintiffs could not use this statement to show Lucas's bias and discriminatory animus.

[32]This Court would suggest that  counsel for the parties look at <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.</u>, 508 U.S. 49 (1993) and <u>White v. Lee</u>, 227 F.3d 1214 (9th Cir. 2000) in arguing the First Amendment issue.

Mediation program for a mediation conference in an attempt to achieve an equitable settlement of the remaining issues. Guy W. Spicola is appointed as mediator for this dispute. His address and phone number are: 3111 W. Martin Luther King Jr. Blvd., Suite 100, Tampa, FL 33601 (813) 350-7959. The parties are directed to set up a mutually convenient time for mediation within the next thirty (30) days of the date of this Order.

3.     If the parties fail to settle this matter, they shall submit an additional memoranda of not more than twenty pages on the remaining issues that are detailed above no later than September 19, 2003. No responses or replies will be necessary unless requested by the Court.

4.     The Pretrial Conference and Trial in this matter are continued. This Court will issue a separate scheduling order.

**DONE** and **ORDERED** in Tampa, Florida on this _____ 8 day of August, 2003.

**JAMES S. MOODY, JR.**
**UNITED STATES DISTRICT JUDGE**

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2002\02-cv-1955 Gourlay\02-cv-1955 summary judgment.wpd

F I L E   C O P Y

Date Printed: 08/11/2003


Notice sent to:

      ____  Matthew J. Moore, Esq.
            Shook, Hardy & Bacon, L.L.P.
            100 N. Tampa St., Suite 2900
            P.O. Box 898
            Tampa, FL 33602-5810

            8:02-cv-01955    rm

      ____  Paul W. Rebein, Esq.
            Shook, Hardy & Bacon, L.L.P.
            100 N. Tampa St., Suite 2900
            P.O. Box 898
            Tampa, FL 33602-5810

            8:02-cv-01955    rm

      ____  Paul M. Quin, Esq.
            Shook, Hardy & Bacon, L.L.P.
            100 N. Tampa St., Suite 2900
            P.O. Box 898
            Tampa, FL 33602-5810

            8:02-cv-01955    rm

      ____  Randall C. Marshall, Esq.
            American Civil Liberties Union
            Foundation of Florida, Inc.
            4500 Biscayne Blvd., Suite 340
            Miami, FL 33137

            8:02-cv-01955    rm

      ____  Donald R. Peyton, Esq.
            Law Office of Donald R. Peyton
            7317 Little Road
            New Port Richey, FL 34654

            8:02-cv-01955    rm

      ____  Gregory David Jones, Esq.
            Rywant, Alvarez, Jones, Russo & Guyton, P.A.
            109 N. Brush St., Suite 500
            P.O. Box 3283
            Tampa, FL 33601

            8:02-cv-01955    rm

      ____  Carmen Alpizar, Esq.
            Rywant, Alvarez, Jones, Russo & Guyton, P.A.
            109 N. Brush St., Suite 500

P.O. Box 3?83
Tampa, FL _,3601

8:02-cv-01955    rm